James H. GUTENKAUF, Plaintiff,

v.

MILLS–JENNINGS COMPANY, a Nevada corporation, and Ramsey Construction & Fabricating Co., Inc., an Oklahoma corporation, Defendants.

MILLS–JENNINGS COMPANY, a Nevada corporation, and Ramsey Construction & Fabricating Co., Inc., an Oklahoma corporation, Counterclaim Plaintiffs,

v.

James H. GUTENKAUF, and Loren D. Munn, Counterclaim Defendants.

No. CV 88–164–BLG–JFB.

United States District Court,
D. Montana,
Billings Division.

Aug. 27, 1990.

Mark E. Noennig, Hendrickson & Everson, Billings, Mont., for plaintiff.

Terry Spear, Billings, Mont., for Loren D. Munn.

Eula Compton, Bozeman, Mont., for defendants.

## MEMORANDUM AND ORDER

BATTIN, Senior District Judge.

This case arises out of a complex factual setting which has been further complicated by the parties' seeming propensity to confuse conjecture and fact. The court will attempt to clarify the basic facts, as follows. Additional facts are set forth later in this Memorandum, as they become relevant to the Court's analysis.

In the spring of 1987, defendant Mills–Jennings Corporation ("Mills–Jennings") purchased Ramsey Corporation ("Ramsey") from plaintiff James H. Gutenkauf and third-party defendant Loren D. Munn. Ramsey operated out of three locations at Billings, Montana, Green River, Wyoming, and Blackwell, Oklahoma. During negotiations, Gutenkauf provided Mills–Jennings with various financial data showing a substantial net worth. The Purchase Agreement, executed on April 8, 1987, included the following provisions:

— Gutenkauf and Munn agreed to enter into employment contracts for a period of twenty-four months following the purchase;

— Gutenkauf and Munn were to receive 30,000 and 16,250 shares of Mills Jennings stock, respectively, with a guaranteed value of $925,000.00 and $325,000.00, respectively, after two years. In the event that the stock did not meet the guaranteed value, Mills–Jennings was to make up the difference in cash or additional stock;

— Gutenkauf was to be paid $117,500 in two installments ($60,000 and $57,500), as consideration and compensation for his personal guarantee of Ramsey debts;

— Gutenkauf and Munn represented, in pertinent part, that:

a. payroll, income and other taxes were current;

b. there were no undisclosed liens against Ramsey;

c. the line of credit at First Interstate Bank would not exceed $225,000 at the time of closing;

d. the shareholders' equity of Ramsey as of March 31, 1987 was at least $875,000.

The agreement was amended on May 1, 1987 and again on September 16, 1987. The September amendment provided in part that Gutenkauf would receive one-half of the auction proceeds over $150,000 from the sale of certain equipment owned by Ramsey at Billings, Montana. The September amendment further contained a broad reciprocal release of claims between Mills–Jennings and Gutenkauf.

Gutenkauf filed this action against Mills–Jennings and Ramsey on July 13, 1988. As most recently amended, Gutenkauf alleges:

Count I: that Mills–Jennings breached the September 16 amendment to the Purchase Agreement, by failing to pay auction proceeds due him in the amount of $19,291.92;

Count II: that Ramsey breached the Purchase Agreement by terminating his employment on October 8, 1987;

Count III: that Ramsey has been unjustly enriched by services performed by him since October 8, 1987, in the amount of $2,077.84;

Counts IV & V: that Ramsey wrongfully discharged him from employment, with actual malice, and that he is entitled to punitive damages;

Count VI: that Mills–Jennings directed Ramsey to terminate him, and thereby committed tortious interference with the employment contract;

Count VII: As an alternative to Count VI, that Mills–Jennings was the alter-ego of Ramsey, and is liable for his wrongful termination;

Count VIII: that the termination of his employment was a breach of the contract between him and Mills–Jennings;

Count IX: that Mills–Jennings has repudiated its obligation to guarantee the value of the stock transferred to him pursuant to paragraph 2(b) of the Purchase Agreement;

Count X: that Ramsey and Mills–Jennings have acted in bad faith towards him;

Count XI: that he is entitled to recover attorneys fees and costs, pursuant to M.C.A. § 39–3–214.

*See,* Defendants' Third Amended Answer and Counterclaims.

Mills–Jennings and Ramsey have filed several amended answers and counterclaims in this matter, joining Loren D. Munn and Richard Arnold as third-party defendants. In the most recent Third Amended Answer and Counterclaims filed on June 20, 1989, Mills–Jennings and Ramsey allege:

Count I: that Gutenkauf and Munn fraudulently misrepresented the value of Ramsey Corporation solely to induce Mills–Jennings to enter into the Purchase Agreement, and that they are entitled to recover compensatory and punitive damages;

Count II: that Gutenkauf and Munn violated federal securities laws by falsely representing the value of Ramsey stock and failing to accurately disclose facts regarding Ramsey's assets and debts;

Count III: that Gutenkauf and Munn fraudulently induced them to enter into the Purchase Agreement, and that they are entitled to rescind the agreement;

Count IV: that Gutenkauf converted $150,000 worth of equipment from Ramsey's Oklahoma facility, and forced Ramsey to sell it to him for $75,000;

Count V: that Gutenkauf converted $250,000 worth of inventory from Ramsey's Oklahoma facility to his own use;

Count VI: that Gutenkauf and Munn violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961–1968, commonly known as "RICO";

Count VII: that Munn converted property belonging to Ramsey to his own use;

Count VIII: that Arnold participated in the wrongful acts committed by Gutenkauf and Munn, constituting breach of his fiduciary duty to Ramsey;

Count IX: that Arnold also violated RICO.

Munn answered the claims asserted by Mills–Jennings and Ramsey and asserted his own counterclaims against them, alleging:

Count I: that Mills–Jennings has breached the Purchase Agreement by refusing to perform its obligation to guarantee the value of stock transferred to him pursuant to paragraph 2(b) of the Purchase Agreement;

Count II: that Mills–Jennings has breached the implied covenant of good faith and fair dealing and acted with actual malice, entitling him to an award of punitive damages;

Count III: that he is entitled to recover reasonable costs and attorneys fees from Mills–Jennings, under M.C.A. § 39–3–214.

Presently pending before the court are numerous motions for summary judgment. Plaintiff seeks summary judgment in his favor on Counts I, II, III, IV, V and VI of Mills–Jennings' and Ramsey's Third Amended Counterclaim, and on Counts I, III and IX of his Amended Complaint. Munn joins in Plaintiff's motion with respect to the counterclaims of Mills–Jennings and Ramsey, and seeks summary judgment in his favor on Count I of his own counterclaim. Mills–Jennings and Ramsey have moved for summary judgment on Counts I, II and IV of their Third–Amended Counterclaims.

The court has carefully considered the briefs and oral argument of counsel with respect to these motions, as well as the substantial and confusing record compiled by the parties. Having so done, the court grants and denies the motions as follows.[1]

## DISCUSSION

As a preliminary matter, the Court notes that federal jurisdiction in this case is based upon diversity of citizenship, under 28 U.S.C. § 1332. The substantive rights and obligations of the parties are therefore governed by Montana state law. *Erie R.R. Co., v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *St. Paul Fire and Marine Ins. Co. v. Weiner,* 606 F.2d 864 (9th Cir.1979).

The Court also finds it appropriate at this time to discuss the standards applicable to this and all motions for summary judgment. Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c).

The initial burden is upon the moving party to identify those portions of the materials on file which it believes establish the absence of an issue of material fact. *T.W. Electrical Services, Inc. v. Pacific Electrical Contractors,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986)). The burden then shifts to the nonmoving party, to set forth "specific facts showing that there is a genuine issue of fact for trial." *Id.,* (citing Rule 56(e); *Kaiser Cement Corp. v. Fischbach & Moore, Inc.,* 793 F.2d 1100, 1103–04 (9th Cir.1986)). The nonmoving party's burden is met by a showing " 'that sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of the truth at trial' ". *Id.* (citing *First National Bank v. Cities Service Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968)).

On a motion for summary judgment, the Judge does not weigh conflicting evidence or make credibility determinations. *Id.* (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 2513, 91 L.Ed.2d 202 (1986)). Further, the evidence is to be viewed in a light most favorable to the nonmoving party. *Id.* However, inferences are to be drawn only if they are reasonable in view of undisputed background or contextual facts. *Id.,* at 631–32. "[I]f a rational trier of fact might resolve the issue in favor of the nonmoving party, summary judgment must be denied." *Id.,* at 631 (citing *Matsushita Electrical Industries Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Thus, the Court's ultimate inquiry is to determine whether the "specific facts" set forth by the nonmoving party, coupled with undisputed background or contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence. *Id.,* at 631 (citing *Anderson,* 106 S.Ct. at 2514). With these

---

**1.** The court has been notified that defendant Ramsey Corporation has filed a petition in bankruptcy in the District of Wyoming. Under the automatic stay provisions of 11 U.S.C. § 362(a), further proceedings in this case must be stayed so far as they concern that defendant. The present rulings therefore do not apply to Ramsey.

considerations in mind, the Court now turns to the merits of the present motions.

At the outset, the Court recognizes that a release executed on September 16, 1987 by Gutenkauf and Richard Arnold, acting as attorney-in-fact on behalf of Mills–Jennings, may bar the counterclaims asserted by Mills–Jennings. However, questions have been raised regarding the scope of the Power of Attorney granted to Arnold, and other matters pertaining to the effect of the release upon the present litigation. The court, after initial review of the document granting Power of Attorney to Arnold, tends to agree with Mills–Jennings that the scope of Arnold's actual authority was limited to matters related to Ramsey, and did not extend to the negotiation or execution of a general release on behalf of Mills–Jennings. Although Gutenkauf asserts the existence of apparent authority, the existence of apparent authority presents a question of fact, not properly resolved upon summary judgment. *See, e.g., Burkland v. Electronic Realty Associates, Inc.*, 228 Mont. 113, 740 P.2d 1142 (1987). Because summary judgment is properly granted on other grounds, the Court will not delve further into these issues, but will continue with its consideration of the merits of the motions.

## I. CROSS MOTIONS FOR SUMMARY JUDGMENT ON COUNT IV OF DEFENDANTS' THIRD AMENDED COUNTERCLAIM

Count IV of Mills–Jennings' Third Amended Counterclaim alleges that Gutenkauf converted and concealed $225,000 worth of equipment from Ramsey's Oklahoma facility and forced Ramsey to sell the equipment to him for $75,000. For purposes of summary judgment, Mills–Jennings accepts what it contends is Gutenkauf's own valuation of the equipment at $150,000.

Although denominated as a claim for conversion, Mills–Jennings confines its discussion on summary judgment to the issues of whether Gutenkauf's purchase of the equipment in question was fair, and whether Mills–Jennings had full knowledge of the actual value of the equipment. According to Mills–Jennings, Gutenkauf breached a fiduciary duty owed to it when he purchased the equipment without advising it of the equipment's true value, and the transaction is therefore voidable at Mills–Jennings' pleasure.

Both Gutenkauf and Mills–Jennings have moved for summary judgment on this Count. Mills–Jennings' motion, filed first, was factually supported by two unauthenticated documents which purport to establish the value of the equipment in question. In response to Mills–Jennings' motion and in support of his own motion for summary judgment on Count IV, Gutenkauf submitted his own affidavit and that of Richard Arnold. Those affidavits establish that Gutenkauf's purchase of the equipment was initiated and negotiated by Richard Arnold, acting on behalf of Mills–Jennings pursuant to discussions with David Smith, president of Mills–Jennings. The affidavits further establish that Gutenkauf provided Arnold with an estimated valuation of the equipment in question, prior to completion of the transaction.

In reply and response, Mills–Jennings filed the affidavit of David Smith, its president. Mr. Smith disputes many of the facts contained in the affidavits submitted by plaintiff, concerning his own involvement in or direct approval of the sale to Gutenkauf. However, noticeably lacking from his affidavit is any challenge to Mr. Arnold's authority to enter into the sale agreement. Thus, assuming that Arnold possessed the authority to enter into the transaction on behalf of Mills–Jennings, the only issue to be decided at this time is whether there was a conflict of interest inherent in the sale by virtue of Gutenkauf's relationship to the corporation, which renders the sale void or voidable at defendants' option.

The undisputed facts show that Mr. Arnold negotiated and entered into the agreement for the sale of equipment to Gutenkauf with full knowledge of Gutenkauf's relationship to the corporation, and the estimated value of the equipment at issue. Mr. Smith does not challenge Mr. Arnold's

knowledge of these relevant facts at the time of the sale. The undisputed facts also show that, as early as August 1987, Mr. Smith knew of the sale to Gutenkauf and the fact that the equipment was sold for as little as 50 cents on the dollar to obtain operating capital. *See,* Affidavit of David Smith, Exhibit B. Mills–Jennings did not contest the reasonableness or fairness of the sale until filing a counterclaim in this action, approximately one year after the sale occurred. Mills–Jennings accepted the benefit of the equipment sale to Gutenkauf by accepting payment for the equipment in the form of cash and a stock adjustment. Mills–Jennings ratified the sale when it renegotiated, in writing, the terms of the final payment. *See,* September 16, 1987 amendment to the Purchase Agreement.[2] Under these circumstances, Mills–Jennings may not successfully attempt to undermine the validity of the sale at this late date. *See, e.g.,* Mont.Code Ann. § 35–1–413(1)(a), (b) (1987) (contract not void or voidable because of conflict of interest if authorized, approved or ratified by directors or shareholders with knowledge of the relationship between the parties to the contract).[3] Summary judgment is properly granted in favor of plaintiff on this count.

## II. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNT V OF DEFENDANTS' THIRD AMENDED COUNTERCLAIM

■ Count V of defendants' Third Amended Counterclaim alleges that at Gutenkauf's direction, $250,000 worth of inventory was transferred from Ramsey's Oklahoma facility and subsequently disappeared. Mills–Jennings alleges that Gutenkauf converted the inventory to his own use. Gutenkauf moved for summary judgment in his favor on this count, pointing out the absence of evidence to support such a claim and the factual implausibility of defendants' theory. In support of his motion, Gutenkauf submitted the sworn affidavit testimony of three persons, to establish that no inventory had been transferred from the Oklahoma facility, no conversion had occurred, and that the inventory had been sold as "scrap".

Mills–Jennings, responding to Gutenkauf's motion, did not dispute Gutenkauf's version of the facts. Instead, it requested that the court consider the motion in light of the fraud claims asserted at Counts I and II of the Third Amended Counterclaim. Essentially, Mills–Jennings is willing to concede the conversion issue, insisting that, as a corollary, it is entitled to summary judgment on its fraud claims. This position is based on the faulty reasoning that if the inventory was not converted by Gutenkauf, then there must have been fraud involved in the initial purchase transaction. The Court does not subscribe to this sort of "either/or" logic when it comes to assessing liability in a civil action, and must consider each claim in light of the evidence which supports it. After considering the absence of evidence to support Mills–Jennings' counterclaim for conversion of inventory by Gutenkauf, the court concludes that he is entitled to summary judgment on this claim as well. However, that finding in no way dictates the result which must be reached with regard to any of Mills–Jennings' fraud-related claims.

## III. CROSS MOTIONS FOR SUMMARY JUDGMENT ON COUNTS I, II AND III OF DEFENDANTS' THIRD AMENDED COUNTERCLAIM

At Counts I, II and III of defendant's Third Amended Counterclaim, Mills–Jennings asserts fraud-related claims arising out of Gutenkauf and Munn's alleged misrepresentation of the value of Ramsey's assets and the extent of Ramsey's debts, amounting to hundreds of thousands of dollars. Mills–Jennings has delineated sev-

---

**2.** At the time of the September 16, 1987 amendment to the Purchase Agreement, Arnold was acting under a broad power of attorney executed by David Smith. Thus, his authority to enter into the amendment regarding Ramsey financial and operational matters cannot be disputed.

**3.** Although this subsection applies by its terms only to contracts entered into by directors of a corporation, the same standards would apply to consideration of contracts entered into by officers.

eral areas in which it claims misrepresentations were made in the financial materials provided to it prior to the purchase of Ramsey by Mills–Jennings. They are as follows:

1. $20,000 "added" to cash without corresponding entry;

2. $135.229 in net overdrafts not reported;

3. $290,000 debt reported as a $180,000 debt;

4. Non-operating plant with a market value of $373,209 erroneously valued at book value of $627,141.

5. No allowance made for $30,391 in uncollectible accounts;

6. Inventory actually valued at $85,000 (or less) reported at $406,335.

7. $40,000 debt owed Gary Smith not reported.

8. Equipment worth $75,000 valued at over $200,000.

With regard to the claim for violations of federal securities laws, found at Count II of the Third Amended Counterclaims, Mills–Jennings also contends that Gutenkauf and Munn neglected to inform it that the Oklahoma facility was not a "going concern"; that it had been shut down and had few, if any, job prospects.

Both Gutenkauf and Mills–Jennings have moved for summary judgment in their favor on Counts I and II. Plaintiff has also moved for summary judgment on Count III of defendants' Third Amended Counterclaim. Third-party defendant Loren Munn joins in plaintiff's motion with respect to these Counts.

■ Under Montana law, intentionally providing false financial reports to a prospective purchaser may give rise to liability for fraud, provided all the elements of such a claim are proven. *See, e.g., McGregor v. Mommer*, 220 Mont. 98, 714 P.2d 536 (1986). To establish a cause of action for fraud, Mills–Jennings must show (1) a representation; (2) falsity of the representation; (3) materiality of the representation; (4) speaker's knowledge of the falsity of the representation or ignorance of its truth; (5) speaker's intent that it be relied upon; (6) the hearer's ignorance of the falsity of

the representation; (7) the hearer's reliance on the representation; (8) the hearer's right to rely on the representation; and (9) consequent and proximate injury caused by the reliance on the representation. *Id.* (citing *Van Ettinger v. Pappin*, 180 Mont. 1, 10, 588 P.2d 988, 994 (1978)). The elements of a claim for securities fraud are slightly different. The parties have agreed that to prevail on this claim, Mills–Jennings must show as a threshold fact that Gutenkauf and Munn made an untrue statement of material fact or omitted to state a material fact with respect to the sale of a security.

On a motion for summary judgment, defendant must set forth, by *admissable* evidence, factual support for each element of its claims. *Beyene v. Coleman Sec. Services, Inc.*, 854 F.2d 1179 (9th Cir.1988); *Canada v. Blain's Helicopters, Inc.*, 831 F.2d 920 (9th Cir.1987). In this case, where the great majority of the parties' proof consists of documentary evidence, the Court deems it especially important to inquire into the authenticity of the factual materials offered. With that thought in mind, the court will review each of the instances of misrepresentation or omission alleged by defendant.

■ First, with respect to items # 1 and 2 above, defendant contends that plaintiff has added "imaginary" funds to certain accounts, as reflected on the March 31, 1987 financial statement prepared by William Siems, to reflect a positive balance of cash on hand. In support of its assertion of fraud on this ground, defendant relies upon an excerpt from a reconciliation statement which shows an increase in the accounts, "per Jim Gutenkauf". *See* Exhibit 3 to *Brief in Support of Mills–Jennings' Motion for Summary Judgment on Counterclaim Counts I and II and In Response to Plaintiff's Motion for Summary Judgment on Count IV* (hereafter "Support Brief, Counts I & II"). The reconciliation statement is submitted as the only proof of this allegation, without any authentication whatsoever. It is wholly inadequate to support a motion for summary judgment on this ground, or to resist summary judgment on an issue where defendant bears

the burden of proof. *See, Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2557, 91 L.Ed.2d 265 (1986) (J. Brennan, dissenting) (citing *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986)). It will therefore not be considered by the Court.

Plaintiff, moving for summary judgment in his favor on this ground, has directed the court's attention to his own affidavit, as well as that of Ramsey accountant William Siems, to establish that a legitimate reason existed for the "imaginary" additions to the accounts. *See,* Plaintiff's Affidavit, pgs. 3–4, ¶ 5; Affidavit of William Siems, pg. 4–5. Defendant has not disputed the legitimacy of those reasons. *See,* Deposition of James R. Schwartz, pg. 64; 123–24. They therefore do not form the basis for an action for fraud.

 In item # 3, above, defendant asserts that plaintiff misrepresented the balance on a line of credit as being $180,000 when in actuality it was $290,000. In support of this claim, defendant submits a bank verification statement, which shows the balance on the line of credit at $290,-000. *See,* Exhibit 5 to Support Brief, Counts I & II. Although the statement is dated March 31, 1987, prior to closing of Mills–Jennings' purchase of Ramsey, there is a handwritten comment in the margin which indicates that the credit line balance was a "4/30/87 bal.". If so, then the bank verification form would not have any bearing on establishing the true balance of the credit line debt on March 31, 1987. In any event, the bank verification form suffers from the same problem of lack of authentication, and is not properly considered by the court in ruling on this issue. The same is true of Exhibit B to Defendants' Brief in Response to Gutenkauf's and Munn's Final Pretrial Motions, which is an inadmissable photocopy of what appears to be a bank record.

 Plaintiff, on the other hand, has submitted his own uncontroverted affidavit testimony which establishes that the balance on the credit line at the time of the sale was $180,000, within the amount permitted under paragraph 6(e) of the Pur-

chase Agreement. In the absence of evidence to contradict that affidavit, defendant's fraud claim on this ground fails.

 Turning to item # 4 above, defendant contends that plaintiff falsely represented the value of Ramsey's Oklahoma facility at its book value of $627,141 instead of the market value of $373,209. According to defendant, the use of market value instead of book value is required when a property is damaged or nonoperational. Defendant relies upon an unauthenticated excerpt from a bank file to establish that the Oklahoma site was not operational at the time of the sale. Again, this is not proper evidence for consideration by the court in ruling on the present motions. Plaintiff, on the other hand, has properly shown that the business went through periods where the Oklahoma facility was nonoperational. However, based on his personal experience with Ramsey over a number of years, Mr. Siems, the accountant, did not deem these periodic shutdowns sufficiently significant to mandate accounting for this property at market rather than book value. *See,* Affidavit of William Siems, pg. 6; *see also,* Plaintiff's affidavit at pg. 2–3, ¶ 2. Further, defendant's expert, Mr. Schwartz, agreed that property only need be devalued in this manner when there is permanent impairment to the property. *See,* Schwartz Deposition, pg. 53–54. Defendant has failed to set forth facts to show that the Oklahoma facility was permanently impaired or shut down at the time of its purchase by defendant. Defendant has therefore failed to show that the use of book over market value constituted a fraudulent statement by plaintiff and Munn.

 With respect to the failure to include a reserve for uncollectible accounts in the March 31, 1987 financial statement, as set forth in item # 5, above, the Court notes that Mr. Smith admits that he knew prior to the closing that there was no such reserve established. *See,* Deposition of David Smith, Vol. I, p. 158–159. Thus, as a matter of law, he has not established ignorance of that fact, as an essential element of a fraud claim. Further, defendant has

not submitted any admissable evidence to show that such a reserve properly ought to have been included. The copy of a Compilation Report prepared by Deloitte, Haskins & Sells consists of hearsay statements presented in the form of an unauthenticated financial statement, and is of no value to the court in assessing the merits of this claim. There is no evidence of fraud arising from plaintiff's failure to include such an account in the financial report.

In item # 6, concerning inventory allegedly undervalued by plaintiff, Mills–Jennings candidly admits that the only fact of which it is certain is that equipment valued at $406,335 in the March 31, 1987 financial statement was eventually sold for $26,000. *See*, Defendants' Brief in Further Support of Mills–Jennings' Motion For Summary Judgment on Counterclaim Counts I and II, pg. 5, lines 8–9, 23–25. Defendant offers only speculation as to what happened to the difference in value between those amounts, stating that it was a result of either conversion or fraud by Gutenkauf and Munn. As previously discussed, there is no merit to the claim of conversion. The affidavit of Gary Smith, submitted by Mills–Jennings to show the lack of value of the inventory, is unsigned and unsworn, and of no evidentiary value whatsoever. *See*, Exhibit A to Defendants' Response to Gutenkauf's and Munn's Final Pretrial Motions. Mills–Jennings also relies on an offer made by a third party to purchase the inventory for $85,000, and upon lower estimates of "value" made by Gutenkauf in other contexts and to other persons, to surmise that the valuation assigned to the inventory on the financial statement was false. However, as plaintiff correctly notes, defendants have not shown that the figures they rely upon have any bearing on the proper valuation of the inventory for accounting purposes.

The inventory was reported on the March 31, 1987 financial statement at book value. The affidavit of Mr. Siems establishes that this is a proper method of valuation, *see*, Siems Affidavit, pgs. 5–6, and plaintiff's expert concurs in the use of this method.

*See*, Schwartz deposition, pg. 46–48. Further, and perhaps more importantly, the undisputed facts show that David Smith had knowledge of the $85,000 offer to purchase the inventory, prior to the time of the sale of Ramsey to defendant. *See*, Smith deposition Volume I, pgs. 44–45; *see also*, Exhibit 1 to Support Brief, Counts I & II. Thus, even if the reporting of the inventory at book value did constitute a false or misleading statement, Mills–Jennings, through its President, had knowledge of that fact and any reliance on such a figure was unreasonable as a matter of law, particularly in light of Mr. Smith's extensive financial and accounting background. Finally, defendant has offered no factual evidence to establish a more appropriate method of valuing the property, and may not rely on the price obtained at a sale several months after the purchase to challenge the reported value of the inventory at the time of sale. This ground for a fraud claim is also without merit.

Item # 7, above, concerns a $40,-000 payment owed by Ramsey to Gary Smith, a former shareholder, as a result of a corporate stock redemption. Defendant contends that the omission of this payment from the financial statement constituted fraud. However, the undisputed facts show that defendant was aware of this outstanding debt prior to entering into the Purchase Agreement. *See*, Smith Deposition, Volume I, p. 168. The debt was specifically mentioned in a recital to the agreement, and David Smith admits that he was aware that it was not reported on the financial statement. Thus, a critical element of a fraud claim, namely ignorance by defendant of the falsity of the alleged misrepresentation, is lacking. Mills–Jennings has also failed to show that the shareholder's equity figure reflected on the March 31, 1987 financial statement was in any way affected by Gary Smith's taking of Ramsey equipment to ensure payment of the debt. *See*, Siems deposition, pgs. 98–99.

Item # 8 concerns the alleged overvaluation by plaintiff of equipment located at Ramsey's Oklahoma facility. Defendant contends that equipment purchased by

plaintiff for $75,000 was valued at the time of purchase at over $200,000. Once again, defendant has failed to offer sufficient facts to establish that there was any misrepresentation as to the value of the equipment.

The equipment was listed on the financial statements at book value. There is no dispute that book value was the proper valuation method for the equipment. *See,* Siems deposition, pg. 18, 82; Smith deposition, Vol. II, pg. 153. Defendant, however, in an attempt to reconcile the difference between book value and the $75,000 paid by plaintiff, surmises that either the remaining equipment was stolen, or never existed in the first place, or was overvalued by plaintiff. *See,* Smith deposition, Vol. II, pg. 154. There is no factual support for any of these theories. Accountant Siems had personal knowledge of the existence of the equipment whose values are reflected in the financial report. Siems deposition, pg. 25. Other "valuations" of the equipment relied upon by defendant, such as plaintiff's estimate of what the equipment might bring at an auction, were not the sort of representations upon which David Smith, an experienced businessman with an accounting background, could reasonably rely. Still other "valuations", such as hearsay statements contained in excerpts from bank records, and computer printouts of equipment lists [4] are not properly authenticated. Fraud is not established simply because, months after the sale of Ramsey to defendant, the equipment was sold under adverse financial conditions for a lesser price. *See* Smith affidavit, Exhibit B.

In item #9, Mills–Jennings challenges the propriety of reporting a $230,-000 note payable to First Interstate Bank as a long term debt rather than a short term debt. The note bore an initial maturity date of November 15, 1987. However, a substantial payment was made on the note in April 1985, and a subsequent amortization schedule showed a maturity date in 1993. Mr. Siems, accountant for Ramsey, made a judgment call that it would be misleading to report the debt as a short term debt under those circumstances. *See,* Siems affidavit, pg. 3–4. Mills–Jennings argues that it was misleading to report it as a long term debt, as it created a false impression of Ramsey's solvency. However, Mills–Jennings has submitted no factual support for its contention that the debt was improperly reported as a long term debt. At best, Mills–Jennings' expert, Mr. Schwartz, described it as a "split decision". *See,* Schwartz deposition, pg. 114. Mills–Jennings has not established fraud based on the method of reporting this debt.

Finally, defendant argues that plaintiff misrepresented to it that Ramsey was a "going concern"; and failed to inform it that there were job losses and a lack of work. However, again the undisputed facts show that defendant was advised of the situation with regard to the Oklahoma facility: that the plant was not operating at full capacity, was operating at a loss, and had a sparse backlog of work. *See* Smith deposition, Vol. I, pgs. 37, 54, 69, 91, 157 and 163. There is no evidence submitted by defendant to support a finding that plaintiff misled it on these points. Exhibit 19, the excerpt of bank records based "assumedly upon information given to it by Gutenkauf", is unauthenticated and therefore not admissable. *See* Support Brief, Counts I & II, pg. 23, and Exhibit 19 thereto. Similarly, Exhibit H to Mills–Jennings Brief in Response to Gutenkauf's Motion for Summary Judgment consists of an unauthenticated and inadmissable copy of an excerpt from a bank record. The evidence submitted by defendant in an attempt to show that Ramsey was insolvent at the time of the sale, namely the compilation prepared by Deloitte, Haskins & Sells, is unauthenticated hearsay, and not admissable on a motion for summary judgment.

In conclusion, after careful review of the materials submitted by the parties with

---

**4.** Exhibit 18 to Support Brief, Counts I & II is not, as Mills–Jennings repeatedly asserts, a list of Ramsey equipment at the Oklahoma facility, and does not serve to establish a represented value of $250,778.21 for that equipment. *See,* Affidavit of James Gutenkauf, Exhibit 1 to Plaintiff's Brief in Support of Motion for Summary Judgment, pg. 4, 6.

respect to their motions for summary judgment on Counts I, II and III of defendants' Third Amended Counterclaim, the court concludes that Mills–Jennings has failed to meet its burden in establishing its entitlement to summary judgment. Additionally, Mills–Jennings has failed to adequately respond to the materials submitted by plaintiff, to defeat summary judgment in favor of plaintiff. Summary judgment is therefore properly granted in favor of plaintiff on Counts I, II and III, and in favor of Munn, who has joined in those motions.

## IV. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNT VI OF DEFENDANTS' THIRD AMENDED COUNTERCLAIMS

■ At Count VI of its Amended Counterclaim, Mills–Jennings asserts violation of Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1961–1968, otherwise known as "RICO". Mills–Jennings alleges that Gutenkauf and Munn "formed a scheme to defraud Mills–Jennings and obtain Mills–Jennings' property by falsely representing various facts as to Ramsey Construction with the specific intent to deceive and defraud Mills–Jennings." *Defendants Third Amended Answer and Counterclaims*, Count VI. In support of this Count, Mills–Jennings refers to the various alleged misrepresentations and omissions set forth above.

■ RICO prohibits "individuals from using income derived from a 'pattern of racketeering activity' through the use of an enterprise engaged in activities affecting interstate commerce." *Volk v. D.A. Davidson & Co.*, 816 F.2d 1406, 1414 (9th Cir.1987) (citations omitted). To prove violation of RICO, Mills–Jennings must show that Gutenkauf and Munn "[engaged] in at least two predicate acts of racketeering activity which [were] sufficiently related and continuous to form a pattern." *Id.* at 1415 (citations omitted). At the time of oral argument on these motions, Mills–Jennings admitted that it would be difficult to establish facts in support of each of the elements of a civil RICO claim. Review of the facts of this case in light of relevant

case law shows this to be the case. Mills–Jennings has alleged that Gutenkauf and Munn engaged in fraudulent misrepresentations regarding the value of Ramsey's assets and the extent of its debt, to induce Mills–Jennings to purchase Ramsey. There is no evidence that the alleged conduct occurred over an extended period of time, or that there exists a threat of continued fraudulent activity. This is not sufficient to establish a "pattern of racketeering activity". *See, H.J. Inc. v. Northwestern Bell Telephone Co.*, 492 U.S. 229, 109 S.Ct. 2893, 106 L.Ed.2d 195 (1989); *United Energy Owners Comm. v. United States Energy Management, Inc.*, 837 F.2d 356, 360–61 (9th Cir.1988); *Medallion Television Enterprises, Inc.*, 833 F.2d 1360, 1362–65 (9th Cir.1987); *Jarvis v. Regan*, 833 F.2d 149, 150–53 (9th Cir.1987); *Service Engineering Co. v. Southwest Marine, Inc.*, 719 F.Supp. 1500, 1509 (N.D.Cal. 1989). Further, having found that Mills–Jennings has not factually supported its claims for fraud, securities fraud or fraudulent inducement, it follows that the same allegations do not demonstrate the "predicate acts" of racketeering activity necessary to establish a claim under RICO. For those reasons, summary judgment is granted in favor of Gutenkauf and Munn on Mills–Jennings' RICO claim.

## V. PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ON COUNTS I, III AND IX OF THE AMENDED COMPLAINT and MUNN'S MOTION FOR SUMMARY JUDGMENT ON COUNT I OF HIS COUNTERCLAIMS

■ At Count I of his Amended Complaint, Gutenkauf seeks to recover $19,-291.92 in auction proceeds due him under the September 16, 1987 amendment to the Purchase Agreement. According to Gutenkauf, Mills–Jennings does not dispute that the amount is owing and has not yet been paid, and he is entitled to summary judgment on that ground. Mills–Jennings, on the other hand, argues that the obligation to split auction proceeds with Gutenkauf was contingent upon his successfully negotiating the release of auction proceeds from the First Interstate Bank; and that since

Gutenkauf failed to do so, he is not entitled to recover his share of the proceeds.

Review of the September 16, amendment to the Purchase Agreement reveals that it does not expressly make the payment of auction proceeds to Gutenkauf contingent upon the release of funds by the Bank. However, the obligation to pay Gutenkauf is, by the terms of the contract, limited to payment of *auction proceeds*. The contract does not, for example, require Mills–Jennings to pay Gutenkauf cash or other assets in an amount equal to the amount of auction proceeds. Gutenkauf assumed responsibility for negotiating the release of the auction proceeds from the bank. His failure to successfully do so arguably excuses Mills–Jennings from fulfilling its obligation to pay Gutenkauf his share of the identified proceeds. However, because the contract does not expressly state the contingent nature of the payment, a question of fact arises as to the parties' intent in that regard.

Gutenkauf, recognizing this potential factual question, has submitted evidence of record setting forth what he contends to be the intent of the parties with respect to the auction proceeds payment. According to Gutenkauf, the payment of auction proceeds was intended to be payment for a preexisting debt, and was in no way contingent upon release of the particular auction proceeds from the Bank. *See,* Plaintiff's Response to Defendants' Interrogatory No. 23, Exhibit 11 to Plaintiff's Brief in Support of Plaintiff's Motion for Summary Judgment. Mills–Jennings, in response to Gutenkauf's motion, has not set forth any facts evidencing a contrary intent, relying instead on legal arguments unhelpful in resolving the factual issue of intent. Thus, the undisputed evidence of record shows that the parties did not intend the payment of auction proceeds to Gutenkauf to be contingent on the release of the proceeds from the Bank. Gutenkauf is entitled to summary judgment on this Count.

At Count III of the Amended Complaint, Gutenkauf seeks recovery from Ramsey for services performed by him after October 8, 1987, under a theory of unjust en-

richment. This claim is asserted only against Ramsey, not Mills–Jennings. Because Ramsey has filed a petition for bankruptcy, proceedings in this matter have been stayed with respect to that defendant. The Court therefore may not resolve the merits of this claim at this time.

■ Count IX of the Amended Complaint and Count I of Munn's Counterclaims state claims for breach of contract, arising out of Mills–Jennings' alleged failure to honor the stock guarantee provision of the Purchase Agreement, set forth at paragraph 2(b) of the Agreement. As one of the terms of the transaction, Mills–Jennings issued stock certificates to Gutenkauf and Munn. The shares were restricted shares, and could not be sold for a period of two years from the date of their issuance. Mills–Jennings agreed to guarantee the value of stock transferred to Gutenkauf and Munn as part of the purchase package, by guaranteeing "that the average of the bid and asked quotation as reported by NASDAQ for the 90 days preceding expiration of such two-year period shall be equal to or more than $925,000, and if such value is not in excess of $925,000 then within 30 days after the expiration of such two-year period, Buyer will, at Buyer's option, do either of the following: (1) pay to sellers the difference between $925,000 price and the value of the stock so determined; or (2) issue to the Sellers additional stock in the Buyer for the difference between the price so determined and the $925,000." *See,* Purchase Agreement, Exhibit A to Amended Complaint, 2(b). Gutenkauf and Munn contend that Mills–Jennings has failed to fulfill this guarantee, and seek summary judgment in their favor for the resulting breach of contract.

In support of their respective motions, Gutenkauf and Munn have referred to evidence of record establishing that Mill–Jennings admits to having failed to honor the contractual guarantee. Mills–Jennings, however, contends that it is relieved of its obligation because of the matters encompassed within its counterclaims, namely the alleged fraud involved in the transaction. This argument fails for more than one rea-

son. First, the assertion of affirmative counterclaims against Gutenkauf and Munn does not constitute a defense to Mills–Jennings' obligations under the contract. Instead, Mills–Jennings, should it prevail on its counterclaims, would be entitled to an offset against any judgment recovered by Gutenkauf and Mills–Jennings under the contract. Second, the Court has, as previously discussed, determined that Mills–Jennings failed to meet its burden in establishing fraud on the part of Gutenkauf and Mills–Jennings in the underlying transaction. Thus, even assuming that the allegations of fraud could constitute a defense to the contract claims, that defense has now been laid to rest. In the absence of an additional ground for relieving Mills–Jennings from its contractual obligation, which has not been shown to exist, Gutenkauf is entitled to summary judgment on Count IX of the Amended Complaint and Munn is entitled to summary judgment on Count I of his counterclaims.

### CONCLUSION

The Court, having carefully scrutinized the materials submitted by the parties in support of their respective motions for summary judgment, concludes that while Mills–Jennings has alleged an intricate web of fraudulent and otherwise wrongful conduct, it has established no admissable factual basis for that scenario. While it is possible that evidence exists to support Mills–Jennings' version of the events, that evidence has not been presented to the Court in such a manner that it may properly be considered upon a motion for summary judgment. For that reason, based on the undisputed record properly before the Court, and the court's finding that Gutenkauf and Munn have established their entitlement to summary judgment as a matter of law, summary judgment will be granted as set forth below.

IT IS ORDERED that summary judgment is granted in favor of Gutenkauf and Munn and against Mills–Jennings on Counts I, II, III and VI of defendants' Third Amended Counterclaims.

IT IS FURTHER ORDERED that summary judgment is granted in favor of Gutenkauf and against Mills–Jennings on Counts IV and V of defendants Third Amended Counterclaims, and Counts I and IX of the Amended Complaint.

IT IS FURTHER ORDERED that summary judgment is granted in favor of Munn and against Mills–Jennings on Count I of Munn's Counterclaims.

IT IS FURTHER ORDERED that summary judgment is denied with respect to Gutenkauf's motion for summary judgment on Count III, based on the automatic stay provisions of 11 U.S.C. § 362(c).

IT IS FURTHER ORDERED that on the Court's own Motion, the trial set in this matter for September 24, 1990 is vacated and reset for Monday, October 15, 1990 at 9:30 o'clock a.m., for reasons relating to the Court calendar. A final pretrial conference will be conducted on Thursday, October 4, 1990, at 9:30 o'clock a.m. in the Chambers of the undersigned.

The Clerk is directed forthwith to notify counsel for the respective parties of the making of this order.