**KAISER CEMENT CORPORATION, a Delaware corporation, Plaintiff-Appellant,**

v.

**FISCHBACH AND MOORE, INC., the Howard P. Foley Co., a District of Columbia corporation, Defendants-Appellees.**

No. 85–1846.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted January 15, 1986.

Decided July 8, 1986.

Les J. Weinstein, Christopher Layne, Blecher, Collins & Weinstein, Los Angeles, Cal., for plaintiff-appellant.

John N. McBaine, Lord, Day & Lord, New York City, Joe Sims, Robert McDermott, Jr., Jones, Day, Reavis & Pogue, Washington, D.C., for defendants-appellees.

Before POOLE, BEEZER and KOZINSKI, Circuit Judges.

BEEZER, Circuit Judge:

Kaiser appeals a grant of summary judgment for defendants.[1] Kaiser claims that defendants conspired to fix prices in the electrical construction industry in violation of the Sherman Act, 15 U.S.C. § 1,[2] Califor-

---

**1.** Appellee Fischbach and Moore, Inc. ("Fischbach"), one of the unsuccessful bidders for the contract awarded to Foley, joins in this appeal pursuant to Ninth Circuit Rule 13(j).

Kaiser's antitrust claim was before Judge Orrick.

The arbitration confirmation, *LaFarge Conseils et Etudes v. Kaiser Cement and Gypsum Corp.*, 791 F.2d 1334 (9th Cir.1986), was presided over by Judge Schwarzer.

**2.** On December 11, 1985, Frank Lench was convicted of two counts of obstruction of justice in *United States v. Frank P. Lench* in the N.D.Cal., No. 85–613. Kaiser cites this conviction in sup-

# 1102

nia's Cartwright Act, Cal.Bus. & Prof.Code ¶ 16720 et seq., and the Racketeer Influenced Corrupt Organizations Act, 18 U.S.C. § 1961 et seq. Kaiser also claims that defendants committed fraud.[3] The district court held that Kaiser could not establish any damage and granted summary judgment. We AFFIRM.

## FACTS

In 1979, Kaiser invited bids from several electrical construction companies for work at its Permanente, California cement plant. Three companies submitted bids, Fischbach & Moore, Inc. (Fischbach), the Howard P. Foley Company (Foley), and Roy M. Butcher Electric (Butcher). Kaiser alleges that Foley, Fischbach, and others conspired to fix bid prices.

Kaiser awarded the contract to Foley. Under the contract, Kaiser assumed the responsibility of coordinating the work. Foley's work was to be completed within ten and a half months but actually took 24 months. Foley anticipated expending 67,000 manhours but actually used 216,000. Foley claimed that Kaiser had breached the contract and that Foley's extra costs resulted from that breach.[4]

■ Foley filed a state court action to compel arbitration as required by the contract. Upon removal, the district court ordered serial arbitration between Kaiser and Foley and also between Kaiser and other contractors involved in the Permanente Project. The Kaiser-Foley arbitration panel received extensive oral and documentary evidence. The arbitrators awarded Foley $330,998 for change orders and $3,455,206 for delay and disruption.[5] The arbitration panel did not explain the basis upon which it calculated the award amounts.[6] The panel considered evidence of Foley's actual

---

port of its claims of fraud in the arbitration and bid rigging.

Kaiser alleged that Foley violated § 1 of the Sherman Act, 15 U.S.C. § 1 in that Foley:

(a) agreed to allocate among themselves electrical construction projects, including the project at Kaiser's Permanente cement plant;

(b) agreed to fix the prices at which electrical construction projects, including Kaiser's Permanente cement plant, were bid, and

(c) agreed to submit noncompetitive, collusive, complimentary, and rigged bids, or to refrain from bidding, for electrical construction projects, including the project at Kaiser's Permanente cement plant.

3. Kaiser requested trebled damages in accordance with Section 4 of the Clayton Act and 18 U.S.C. § 1964(c), injunctive relief, costs and attorneys' fees, and punitive damages.

4. Foley's counsel, Mr. McInerney, explained how Kaiser breached the contract.

[Kaiser] entered into multi-prime contracts with various contractors and it and only it can coordinate activities of these contractors. When they had them on the job site, Kaiser Cement increased the scope of the work of almost every contractor on the job, sometimes by as much as 100, 200 percent of various change orders. They had contractors literally working on top of each other which resulted in inefficiency.

The evidence also showed that the drawings were changed, the construction drawings were considerably changed and altered by Kaiser during the course of construction. That all the materials on this job that was to be erected and installed by the contractors was purchased and fabricated by Kaiser Cement; that the purchase and fabrication were often mishandled; the equipment was often delayed in arriving at the job; the contractors in many cases had no place to work and were directed by Kaiser to just go out and find a place to work.

The evidence further showed in our particular case, the Foley case, we had literally emptied the union hall in Santa Clara. There was just simply no other electricians to be had. We had so many men on the job and they were told don't discharge them, send them to find some work for them at other places.
Transcript of August 5, 1983 hearing, pages 7–8.

5. Prior to the award, Kaiser paid Foley $8.3 million, consisting of the $4.8 million contract price and $3.5 million in additional change orders.

6. Arbitrators are not required to state the reason for their award. *United Steelworkers of America v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 598, 80 S.Ct. 1358, 1361, 4 L.Ed.2d 1424 (1960). The district court noted the pivotal role played by the ambiguous award in the antitrust litigation. "In essence, the argument over whether Kaiser's payments to Foley exceeded the fair market value of the work done is an argument over the nature of the arbitrator's decision."

costs,[7] an audit requested by the arbitrators, exhibits 2 and 7, which may have been fabricated, and Frank Lench's testimony which was claimed to be false.[8] Kaiser argues that the arbitrators based the award on the fraudulent evidence. On August 5, 1983, the district court observed that "[I]t is not self-evident how the arbitrators determined the amount of the award." Kaiser reasons, however, that the award incorporates the fixed price and therefore constitutes injury.

Three days before confirmation of the award, Kaiser filed this antitrust action. The district court granted Foley's motion for summary judgment on March 4, 1985, stating that "[t]he arbitrators having determined the actual cost of Foley's work and the fair compensation to which Foley is entitled for that work, there remains no genuine issue of material fact because there can be no damage to Kaiser." The RICO, Cartwright Act, and fraud claims were also dismissed because Kaiser failed to establish injury.[9] On appeal the parties raise questions of the preclusive effect of an arbitration award in subsequent antitrust litigation and the applicability of judicial estoppel to Kaiser's argument in the arbitration litigation. We affirm the district court on other grounds and do not consider these issues.[10]

## ANALYSIS

Summary judgment is appropriate in antitrust actions when there is no "significant probative evidence tending to support the complaint." *Robert's Waikiki U-Drive, Inc. v. Budget Rent-A-Car Systems, Inc.,* 732 F.2d 1403, 1406 (9th Cir.1984) (quoting *First National Bank of Arizona v. Cities Service Co.,* 391 U.S. 253, 290, 88 S.Ct. 1575, 1593, 20 L.Ed.2d 569 (1968)). · See *Mutual Fund Investors, Inc. v. Putnam Management Co.,* 553 F.2d 620, 624 (9th Cir.1977). Summary judgment is proper when the moving party establishes that he is entitled to judgment as a matter of law and that no genuine issue of material fact exists.[11] *Jewel Cos., Inc. v. Pay Less Drug Stores Northwest, Inc.,* 741 F.2d 1555, 1559 (9th Cir.1984). The granting of a summary judgment is reviewed de novo. *Lew v. Kona Hospital,* 754 F.2d 1420, 1423 (9th Cir.1985). On review, we must view the evidence and inferences therefrom in the light most favorable to the party opposing summary judgment. *Diaz v. American Telephone & Telegraph,* 752 F.2d 1356, 1362 (9th Cir.1985); *Jewel Cos.,* 741 F.2d at 1559.

"The initial burden of showing the absence of material factual issues rests on the proponent of a summary judgment motion. Once that burden is met, however, the opponent must counter with specific factual allegations revealing a genuine dispute of fact in order to preclude summary judgment." *International Union of Bricklayers & Allied Craftsman Local Union No. 20 AFL–CIO v. Martin Jaska, Inc.,* 752 F.2d 1401, 1405 (9th Cir.1985). A party opposing summary judgment does

---

**7.** In his April 1983 letter, arbitrator Anderson told the parties that the panel requested an audit "of Foley's cost records for this project ... in order to verify the actual costs to Foley to perform the work on this project."

**8.** Exhibits 2 and 7, which Kaiser's consultant Erwin claims to have fabricated, were introduced in the arbitration.

**9.** Kaiser requested injunctive relief under section 16 of the Clayton Act, 15 U.S.C. § 26. That section makes injunctive relief available

under the same conditions and principles as injunctive relief against threatened conduct that will cause loss or damage is granted by courts of equity, under the rules governing such proceedings, and upon the execution of proper bond against damages for an injunction improvidently granted and a showing that the danger or irreparable loss or damage is immediate....

Kaiser neglected to argue the merits of its request at summary judgment and therefore waived its request for an injunction.

**10.** We may affirm on any basis present in the record. *City of Las Vegas v. Clark County,* 755 F.2d 697, 701 (9th Cir.1985); *Jewel Cos., Inc. v. Pay Less Drug Stores Northwest, Inc.,* 741 F.2d 1555, 1564–65 (9th Cir.1984).

**11.** A material issue is one that may affect the outcome of the litigation. *Mutual Fund Investors,* 553 F.2d at 624.

not have to file any countervailing materials when the movant's papers are insufficient on their face to demonstrate the lack of any material issue of fact. *Lew*, 754 F.2d at 1423; *Sheet Metal Workers' International Association Local No. 355 v. NLRB*, 716 F.2d 1249, 1254 (9th Cir.1983); *Zoslaw v. MCA Distributing Corp.*, 693 F.2d 870, 883 (9th Cir.1982), *cert. denied*, 460 U.S. 1085, 103 S.Ct. 1777, 76 L.Ed.2d 349 (1983). Once the moving party establishes that he would be entitled to a directed verdict at trial unless contradicted, the burden shifts to the opposing party to show that a contradiction is possible. *ALW, Inc. v. United Air Lines, Inc.*, 510 F.2d 52, 55 (9th Cir.1975); *Stansifer v. Chrysler Motors Co.*, 487 F.2d 59, 63 (9th Cir.1973); *Doff v. Brunswick Corp.*, 372 F.2d 801, 804 (9th Cir.1966), *cert. denied*, 389 U.S. 820, 88 S.Ct. 39, 19 L.Ed.2d 71 (1967). If the party moving for summary judgment presents evidence which, taken by itself, would establish a right to a directed verdict at trial, the motion must be granted in the absence of any presentation by the opposing party. *THI-Hawaii, Inc. v. First Commerce Financial Corp.*, 627 F.2d 991, 993 (9th Cir.1980); *Neely v. St. Paul Fire & Marine Insurance Co.*, 584 F.2d 341, 343 (9th Cir.1978); *Donnelly v. Guion*, 467 F.2d 290, 293 (2d Cir.1972). The resisting party must respond with more than mere hearsay and legal conclusions.[12] *Doff*, 372 F.2d at 804; *see Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir.1979).

To prevail, an antitrust plaintiff must establish a violation of the antitrust laws and an actual injury attributable to something the antitrust laws were designed to prevent. *J. Truett Payne Co. v. Chrysler Motors Corp.*, 451 U.S. 557, 562, 101 S.Ct. 1923, 1927, 68 L.Ed.2d 442 (1981); *Kapp v. National Football League*, 586 F.2d 644 (9th Cir.1978), *cert. denied*, 441 U.S. 907, 99 S.Ct. 1996, 60 L.Ed.2d 375 (1979). Injury is also the sine qua non of recovery by plaintiff on every one of its other theories of recovery. The Cartwright Act, *Lowell v. Mother's Cake & Cookie Co.*, 79 Cal.App.3d 13, 23, 144 Cal. Rptr. 664, 671 (1978); common law fraud, *Committee on Children's Television, Inc. v. General Foods Corp.*, 35 Cal.3d 197, 220, 197 Cal.Rptr. 783, 797, 673 P.2d 660, 674 (1983); and RICO, *Sedima S.P.R.L. v. Imrex Co.*, — U.S. —, 105 S.Ct. 3275, 3286, 87 L.Ed.2d 346 (1985). In sum, without a showing of injury, plaintiff cannot recover.

Thus, Kaiser would have to have proved that Foley violated the antitrust laws by participating in an illegal conspiracy to fix the price of its electrical construction services; and that Kaiser was injured by having paid a price that was fixed and was in excess of the fair market value of the goods or services delivered to Kaiser.

Foley introduced sufficient evidence to indicate that even if a price-fixing conspiracy existed, Kaiser was not injured because the arbitrators awarded Foley an amount they considered to be fair without regard to any bid-rigging.[13] Kaiser failed to rebut

---

**12.** "To hold otherwise would give free rein to any plaintiff who can draft an antitrust complaint capable of withstanding a motion to dismiss to go to trial with only a wing and a prayer supporting his well drafted complaint." *Mutual Fund Investors*, 553 F.2d at 624. An opposing party may not defeat a summary judgment motion, once the movant has met his burden, in the absence of any significant probative evidence tending to support the complaint. *First Nat'l Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968); *Commodity Futures Trading Comm'n v. Savage*, 611 F.2d 270, 282 (9th Cir. 1979); *Mutual Fund Investors*, 533 F.2d at 624. "A party may not prevail in opposing a motion for summary judgment by simply overwhelming

the district court with a miscellany of unorganized documentation." *Zoslaw*, 693 F.2d at 883.

**13.** In its prearbitration brief, Kaiser's expert testimony was summarized by its counsel as follows:

The result of these and numerous other bidding errors was that Foley's bid grossly underestimated the manpower and supervision required to do the work. The original bid documents have been analyzed by the professional estimating firm of Lee Saylor, Inc. which has concluded that Foley should not have bid less than $6,121,077.00 for the work shown on the original plans and specifications. Instead, Foley bid $4,801,001.00. It is this difference

Foley's showing that the amount of the arbitrators' award constituted a fair price for Foley's performance under the construction contract. Kaiser failed to show injury and Foley was entitled to summary judgment.

AFFIRMED.

that Foley is now really seeking under the guise of an impact claim.

Kaiser also introduced the expert opinion of Lee Misner which was that Foley underbid the contract. See Exhibit 6.