**In re HAMILTON TAFT & COMPANY, Debtor.**

**Frederick S. WYLE, Trustee for Hamilton Taft & Co., Plaintiff/Appellant,**

**v.**

**HOWARD, WEIL, LABOUISSE, FRIED-RICHS, INC., a Louisiana corporation; Howard Weil Financial Corporation, a Louisiana corporation; Legg Mason, a Maryland corporation, Defendants/Appellees.**

**No. C 95–1612–SI.**

United States District Court, N.D. California.

Oct. 12, 1995.

Abram S. Feuerstein, L.J. Martiniak, Feldman Waldman & Kline, San Francisco, CA, for plaintiff/appellant Frederick J. Wyle.

J. Michael Kelly, Robert L. Eisenbach, III, Cooley Godward Castro Huddelson & Tatum, San Francisco, CA, for defendants/appellees Howard, Weil, Labouisse, Freidrichs, Inc., et al.

## ORDER AFFIRMING SUMMARY JUDGMENT

ILLSTON, District Judge.

On September 29, 1995, the Court heard argument on plaintiff/appellant Frederick Wyle's appeal from the granting of summary

judgment to defendant/appellee, Howard, Weil, Labouisse, Friedrichs, Inc. ("Howard Weil") by the Bankruptcy Court for the Northern District of California. Having considered the arguments of counsel and the papers submitted, the Court hereby AFFIRMS the Bankruptcy Court's decision.

## STANDARD OF REVIEW

■ In reviewing summary judgment, the court accepts the bankruptcy court's factual findings unless they are clearly erroneous but must determine de novo whether these facts support summary judgment. *In re Siragusa*, 27 F.3d 406 (9th Cir.1994); *In re Weisman*, 5 F.3d 417, 419 (9th Cir.1993).

## FACTUAL BACKGROUND

Debtor Hamilton Taft & Co. was a company which collected payroll tax funds from its clients and then paid over the payroll taxes for them when due, relieving the clients of the administrative burdens of tax computation and filing, and taking advantage of the time value of money to earn interest on the funds until the last moment before the taxes were due. Hamilton Taft was placed in involuntary bankruptcy by its creditors in March of 1991, after it failed to make the tax payments then due for many of its major clients.

It was later determined that Mr. Connie C. "Chip" Armstrong, Jr., who had obtained control of Hamilton Taft in approximately 1989, had invested the entrusted funds in a variety of speculative and unsound investments, had spent a good deal of it on himself and, as a general proposition, had lost the money which was supposed to be paid over to the taxing authorities. *See Hamilton Taft & Company v. Federal Express* (91–03518–JPV N.D.Cal.)

The bankruptcy proceedings have spanned many years and many lawsuits. The one involved here, brought by the trustee in March, 1993, against a securities brokerage company in Louisiana, involved transactions which occurred in late 1987 and early 1988, before Mr. Armstrong's involvement with Hamilton Taft led it to the bankruptcy courts. The trustee challenges financial transactions engaged in by prior owners of the company, in connection with their transfers of ownership, before Mr. Armstrong acquired his ownership interest in the firm.

As found by the bankruptcy judge, the undisputed facts involved in the instant lawsuit are as follows: On December 30, 1987, MaxPharma, Inc. paid $500,000 for an option to buy the stock of Hamilton Taft & Company from its then-owner, Connecticut General Corporation ("CIGNA"). The option had to be exercise by January 29, 1988 and the $500,000 would be applied toward the $4,100,000 purchase price. MaxPharma was unable to arrange financing for the stock purchase using the stock as collateral. Howard Weil, however, was willing to finance the transaction based on a reverse repurchase ("reverse repo") of a treasury bill.

On January 28, 1988, Hamilton Taft wired $5,000,000 to Howard Weil. On January 29, 1988, Howard Weil used approximately $4,900,000 of those funds to purchase a 90–day treasury bill having the face value of $5,000,000 ("the T-bill"). Also on January 29, Hamilton Taft sold the T-bill back to Howard Weil for $4,100,000 based on a "reverse repo" agreement under which Hamilton Taft would repurchase the T-bill in 90 days for the sale price plus interest.

Wyle, the bankruptcy trustee for Hamilton Taft, claims that the $4,100,000 was transferred directly to MaxPharma upon sale of the T-bill. Howard Weil claims that the $4,100,000 was credited to Hamilton Taft's account and that the money was subsequently wired to MaxPharma. For the purpose of the summary judgment motion, the bankruptcy court accepted Wyle's position.

Hamilton Taft rolled the T-bill over into new treasury bills and eventually into treasury notes. In January 1989, Hamilton Taft directed Howard Weil to sell the treasury notes and use the proceeds to satisfy its obligations under the reverse repo agreement.

On March 20, 1991, creditors filled an involuntary chapter eleven bankruptcy petition against Hamilton Taft. Wyle was appointed trustee on March 26, 1991 and filed this action in bankruptcy court on March 26, 1993. Wyle argued that the transaction was,

in reality, a leveraged buyout ("LBO") in which MaxPharma used Hamilton Taft's funds to purchase CIGNA's stock in Hamilton Taft. Wyle also contended that the transaction rendered Hamilton Taft insolvent and was a fraudulent conveyance. Wyle sought to recover the value of the T-bill or the $4,100,000 proceeds from the sale of the T-bill.

## PROCEDURAL HISTORY

On January 19, 1995, the United States Bankruptcy Court for the Northern District of California issued an opinion granting summary judgment to defendant Howard Weil.[1] Wyle then filed this appeal to the district court.

## LEGAL STANDARD

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." F.R.C.P. 56(e).

■ In a motion for summary judgment, "[i]f the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact," the burden of production then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, *specific facts* showing that there is a genuine issue for trial.'" *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *Kaiser Cement Corp. v. Fischbach & Moore, Inc.,* 793 F.2d 1100, 1103–04 (9th Cir.), *cert. denied,* 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986).

■ A moving party who will not have the burden of proof at trial need only point to the insufficiency of the other side's evidence, thereby shifting to the nonmoving party the burden of raising genuine issues of fact by substantial evidence. *T.W. Electric,* 809 F.2d at 630 *citing Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53; *Kaiser Cement,* 793 F.2d at 1103–04.

■ In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party. *T.W. Electric,* 809 F.2d at 630–31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Ting v. United States,* 927 F.2d 1504, 1509 (9th Cir.1991).

## DISCUSSION

Plaintiff/appellant Wyle contends that the bankruptcy court erred in four respects:

1) He contends that Bankruptcy Code Section 546(e) (11 U.S.C. § 546(e)) is inapplicable to this transaction because section 546(f) specifically addresses the avoidance of "settlement payments" in reverse repo transactions and, hence, takes precedence over section 546(e);

2) He contends that the transfer of the T-bill did not constitute a "settlement payment" under either 546(e) or 546(f);

3) He contends that Section 546(e) contains an "LBO exception" allowing Wyle to avoid the transaction; and

4) He contends that a triable issue of fact existed as to whether or not the transaction was a genuine "reverse repo" transaction.

### 1.  *Section 546(e) versus Section 546(f)*

■ The bankruptcy court found that section 546(e) rather than 546(f) applied to this transaction, and that under 546(e), the transaction cannot be avoided by Wyle. Section 546(e) states in relevant part:

> ... the trustee may not avoid a transfer that is a margin payment ... or settlement payment ... made by or to a ... stockbroker ... that is made before the

---

**1.** Defendants Howard Weil Financial Corp., Legg Mason, Inc., CIGNA, and CIGNA Holdings, Inc., were named in the bankruptcy court action but dismissed before summary judgment was entered.

commencement of the case ... 11 U.S.C. § 546(e).

▇▇▇ Under Ninth Circuit case law, true reverse repos are covered by section 546(e). *See In re Comark*, 971 F.2d 322, 325 (9th Cir.1992) (*"Comark I"*); *In re Comark*, 145 B.R. 47, 52–53 (9th Cir. BAP 1992) (*"Comark II"*). Despite Wyle's contentions to the contrary, whether or not a transaction is a reverse repo is analyzed under an objective test. *Id.* at 53. The transaction at issue meets the objective definition of a reverse repo because a security was sold with an agreement to repurchase it with interest. *Id.*[2]

▇▇ In addition, even if the transaction was not a conventional reverse repo, section 546(e) covers a broad range of securities transactions. *Id.* at 52 (§ 546(e) "includes a transfer of securities that completes any securities transaction"). Here, the transaction involved Hamilton Taft buying the T-bill from Howard Weil and then selling it back to Howard Weil. A T-bill is clearly a security, and hence the transaction is a "securities transaction" under 546(e). *In re Kaiser Steel Corp.*, 952 F.2d 1230, 1238–40 (10th Cir.1990), *cert. denied*, 505 U.S. 1213, 112 S.Ct. 3015, 120 L.Ed.2d 887 (1992).

▇▇ Wyle argues that the transaction must be analyzed under section 546(f) and that under 546(f) the transaction may be avoided. Section 546(f) states in relevant part:

> ... the trustee may not avoid a transfer that is a margin payment ... or settlement payment ... made by or to a repo participant in connection with a repurchase agreement and that is made before the commencement of the case ... 11 U.S.C. § 546(f).

"Repo participant" is defined as:

> ... an entity that, on any day during the period beginning 90 days before the date of the filing of the petition, has an outstanding repurchase agreement with the debtor ... 11 U.S.C. § 101(46).

Wyle argues that 546(f) is more specific than section 546(e) and thus should apply to this transaction. He contends that Howard Weil would not be protected under 546(f) because the reverse repo transaction closed more than 90 days before the bankruptcy petition was filed. This court agrees with the bankruptcy judge that, based on the statutory language and legislative history of section 546(f), Wyle's argument is incorrect.

Section 546(e) applies to a specific class of financial entities including "commodity broker, forward contract merchant, *stockbroker*, financial institution, or securities clearing agency" (emphasis supplied). It is uncontroverted that the defendant in this case is a stockbroker and thus a member of the specific class of entities covered by this section. Section 546(f) applies more generally to other "participants" in the repo market. *See Comark II*, 145 B.R. at 52–53. Thus, the specificity of language would support application of 546(e) to this transaction over 546(f), because one of the parties to the transaction was a stockbroker.

In addition, the legislative history of section 546(f) indicates that 546(f) was enacted to clarify section 546(e), not to modify it:

> On balance, the legislative history of section 564(f) reflects that the enactment of section 546(f) was intended to clarify rather than change earlier law. *Id.; see also* S.Rep. No. 65, 98th Cong., 1st Sess. 45, 49 (1983).

Section 546(e), by its terms, clearly applies to this transaction; the alternative section will not be applied absent clear indication that the alternative was intended to be exclusive. Based on the language of the two sections and the cited legislative history, 546(f) does not narrow the scope of 546(e) and nothing suggests that it was intended to be exclusive. Thus, Wyle's position that the transaction must be analyzed under 546(f) is unpersuasive.

### 2. Settlement Payment

▇▇ Wyle argues that the transaction was not a "settlement payment" under sec-

---

**2.** *Comark II* set forth additional objective factors to be considered in determining whether a transaction was a reverse repo. 147 B.R. at 53.

tion 546(e). In *Comark I*, the Ninth Circuit joined the Third and the Tenth Circuits in determining that "settlement payment" is to be defined broadly. 971 F.2d at 326. The *Comark I* court stated, "[a] settlement payment clearly includes a transfer of securities that completes a securities transaction." *Comark I*, 971 F.2d at 326 (citation omitted).

More specifically, *Comark I* and *Comark II* both held that a settlement payment includes a transfer of cash or securities going toward completion of a securities transaction. 971 F.2d at 326; 145 B.R. at 52.[3] Thus, under section 546(e), the transaction was a settlement payment and cannot be avoided by Wyle.

### 3. The "LBO Exception"

Next, Wyle argues that there is an exception for LBO transactions in section 546(e). Wyle relies extensively on *Wieboldt Stores, Inc. v. Schottenstein*, 131 B.R. 655 (N.D.Ill. 1991). In *Wieboldt*, the court found that section 546(e) did not prevent a trustee from avoiding a fraudulent conveyance from shareholders whose shares were purchased in an LBO. In the present case, Wyle seeks to avoid a transfer involving a stockbroker. The *Wieboldt* court noted that stockbrokers were specifically protected from such actions by bankruptcy trustees under section 546(e).

Wyle also relies on *Lippi v. City Bank*, 955 F.2d 599 (9th Cir.1992) and *Kendall v. Sorani*, 151 B.R. 1012 (Bankr.N.D.Cal.1993). However, neither of these cases even mentions section 546(e) and, hence, add little weight to Wyle's argument.

The bankruptcy court correctly determined that any "LBO exception" in section 546(e) is inapplicable to stockbrokers.

### 4. Factual Issues

Finally, because the bankruptcy court correctly found that the transaction was a reverse repo; that reverse repos are governed by an objective standard; and that reverse repos are protected under section 546(e), the bankruptcy court correctly determined there

are no issues of fact that must be resolved by a finder of fact.

### CONCLUSION

The bankruptcy court correctly interpreted section 546(e) and correctly determined that no material issues of fact existed. Accordingly, the bankruptcy court's granting of summary judgment is AFFIRMED.

The clerk shall close the file.

IT IS SO ORDERED.

---

**3.** In addition, the bankruptcy court found, as a matter of undisputed fact, that Hamilton Taft directed Howard Weil to pay the funds to Max-

Pharma. Thus Wyle's argument that the transfer was not a settlement payment because it was made to a third party is meritless.