Carol J. HIMAKA, Plaintiff,

v.

BUDDHIST CHURCHES OF AMERICA, Defendants.

No. C–94–2880 DLJ.

United States District Court, N.D. California.

Nov. 22, 1995.

Stephen R. Pappas, Sole Practitioner of Palo Alto, CA, on behalf of plaintiff.

Glen S. Umeda, with the law firm Robinson, Di Lando & Whitaker, of Los Angeles, CA, appeared on behalf of defendants Buddhist Churches of America, Sei Shohara, and Seigen Yamaoka.

Defendant Dennis Shinseki appeared pro se.

### ORDER

JENSEN, District Judge.

On October 25, 1995, the Court heard arguments on defendant's motion for summary judgment, defendant's motion to dismiss the new causes of action included in plaintiff's second amended complaint, and defendant's motion for Rule 11 sanctions. Having considered the arguments of counsel and the papers submitted, the Court hereby GRANTS defendant's motion for summary judgment, GRANTS defendant's motion to dismiss, and DENIES defendant's motion for Rule 11 sanctions.

# I. BACKGROUND

A. *Factual Background*

Plaintiff was employed as national director of the Department of Buddhist Education for the Buddhist Churches of America (BCA). She is ordained as a Buddhist minister. Remaining defendant BCA is a tax-exempt religious "umbrella" organization which has various individual Buddhist temples as constituent members.

Plaintiff alleges that in 1991, she began receiving a series of heavy breathing telephone calls at her residence. She says that her phone number was not listed in the telephone utility's directory, but was published in the BCA information directory. She claims that the heavy breathing calls continued for the next few years, even though she changed her unlisted phone number several times.

In 1993, plaintiff went to an annual meeting of the Buddhist Ministers' Association ("BMA") held at a Red Lion Inn in San Jose, California. On the first evening of the meeting, at approximately 12:30 a.m., plaintiff claims she was awakened by a telephone call very similar in character and nature to the harassing telephone calls she had been receiving at her home since 1991. According to plaintiff, the caller spent several seconds breathing heavily and then whispered, "I want you" over and over. Plaintiff says that she asked, "Who is it?" and, when she received no response, hung up the phone.

After hanging up the phone, plaintiff says that she contacted the management of the Red Lion Inn, reported the call and asked if the hotel could tell her who placed the call. The next morning, the hotel management called plaintiff, told her they had traced the call to another room in the hotel and said they would put the party in that room on the line. Plaintiff alleges that Dennis Shinseki, a minister at the White River Buddhist Temple in Auburn, Washington, then came on the line.[1]

According to plaintiff, when Shinseki came on the telephone line, he claimed that he did not place the call and asserted that several people had been in his room. Plaintiff reported the entire incident to Bishop Seigen Yamaoka, her BCA superior. Plaintiff asserts that she feared for her safety when she learned that Bishop Yamaoka would not ask Shinseki to leave the meeting or the hotel and so she stayed at her home in San Leandro the next evening.

After the incident was reported, several meetings were held between Bishop Yamaoka and the plaintiff, Shinseki, and/or other BCA staff members in an apparent attempt to get a complete story and to take responsive action. Yamaoka sent several letters to Shinseki outlining the disciplinary sanctions and rehabilitative efforts expected by the BCA. Shinseki was to go into a counseling program and make a written acknowledgment that he would not harass plaintiff Himaka in the future. Yamaoka warned Shinseki that failure to comply and further incidents could lead to a loss of ministerial status.

Shinseki sent two letters to plaintiff, neither of which she felt to be an appropriate apology for his behavior at the annual meeting. Plaintiff alleges that Shinseki only attended one counseling session. Plaintiff also alleges that Shinseki changed his version of the incident several times—originally claiming that other people were in the room and that someone else made the call, then admitting that he made the call and not denying plaintiff's version of the statements made in the call, and finally, admitting that he made the call but disputing plaintiff's version of the statements made by him in the call.

An Investigative Report of the incident was rendered by members of a specially designated committee of the BCA. The committee found that Shinseki had attempted "to obscure the truth in a serious investigation while performing as a minister of the BCA." Himaka Declaration, Ex. 7 at 9. The report concluded that "sufficient facts supported a finding of misconduct to warrant certain specific sanctions" against Shinseki. Himaka Declaration, Ex. 7 at 10.

On July 15, 1993, plaintiff filed a complaint with the EEOC regarding Shinseki's tele-

---

1. The White River Buddhist Temple is a member of the BCA.

phone call. She was issued a right to sue letter on February 27, 1994. Plaintiff Himaka alleges that her department's funds were cut, and then restored for the fiscal year 1995. She also alleges that, at the BCA meeting in February of 1995, her department's funding was entirely eliminated effective February 1996. She claims this action will effectively eliminate her job as of February 1996.

### B. *Procedural History*

Plaintiff filed suit on August 12, 1994. Defendants first moved to dismiss the complaint on the grounds that the Buddhist Church was not an "employer" with 15 or more employees within the scope of Title VII, 42 U.S.C. § 2000e *et seq.* At a hearing held November 23, 1994, the Court orally denied defendants' motion to dismiss the complaint, but indicated that plaintiff's Title VII and Fair Employment and Housing Act (FEHA) claims against the individual defendants were improper. In an Order filed December 13, 1994, the Court memorialized its oral ruling: the Court denied defendants' motion to dismiss the complaint, holding that the BCA was an "employer" within the scope of Title VII, but granted defendants' motion to dismiss the Title VII and FEHA claims against the individual defendants. Plaintiff's remaining claims against the individual defendants were not dismissed. Dec. 13, 1994 Order, at 17.

Defendants next moved to dismiss the complaint on the grounds that application of Title VII and state law to the employment relationship between a church and its minister violates the First Amendment. In an Order dated January 19, 1995, the Court denied the motion to dismiss the complaint, but granted the motion to dismiss certain causes of action. Specifically, the Court ordered plaintiff's state and federal claims for unlawful retaliation dismissed on First Amendment grounds. The Court also ordered plaintiff's claim for intentional infliction of emotional distress dismissed on statute of limitations grounds. The Court ruled, however, that plaintiff's other claims remained in the action. January 19, 1995 Order, at 17.

Defendants next moved to dismiss plaintiff's claims for sexual harassment/discrimination arising under Article I, Section 8 of the California Constitution. In an order filed May 8, 1995, the Court dismissed plaintiff's California Constitutional claims. As these were the only remaining claims against the individual defendants, the individual defendants are no longer parties to the action.

Plaintiff then sought leave to amend her complaint. In an order entered September 7, 1995, the Court granted in part and denied in part plaintiff's motion for leave to amend. The order granted plaintiff leave to amend her complaint:

(a) to include the new factual allegations based on defunding plaintiff's position;

(b) to add as a defendant the BCA Ministers Association; and

(c) to add a contract claim for breach of the implied covenant of good faith and fair dealing.

However, the order specifically denied plaintiff leave to amend:

(a) to add a tort claim for wrongful discharge in violation of public policy;

(b) to reallege claims arising under the California Constitution, Article I, Section 8.

On September 18, 1995, plaintiff filed her second amended complaint.

In the second amended complaint, plaintiff Himaka alleges causes of action for sexual harassment, disparate wage treatment, other employment discrimination on the basis of gender, and retaliation, all in violation of Title VII, 42 U.S.C. § 2000e *et seq.* In addition, plaintiff alleges a state law cause of action for breach of a covenant of good faith and fair dealing implied by her employment contract.

Now before the Court are defendant's motions for summary judgment on the sexual harassment and discrimination claims, dismissal of the new causes of action for retaliation and breach of covenant for failure to state a claim, and Rule 11 sanctions.

## II. DISCUSSION

### A. *Summary Judgment Motion*

#### 1. *Legal Standard*

The Federal Rules of Civil Procedure provide for summary adjudication when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c).

■ In a motion for summary judgment, "[i]f the party moving for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact," the burden of production then shifts so that "the nonmoving party must set forth, by affidavit or as otherwise provided in Rule 56, '*specific facts* showing that there is a genuine issue for trial.'" *T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n,* 809 F.2d 626, 630 (9th Cir.1987) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)); *Kaiser Cement Corp. v. Fischbach & Moore, Inc.,* 793 F.2d 1100, 1103–04 (9th Cir.), *cert. denied,* 479 U.S. 949, 107 S.Ct. 435, 93 L.Ed.2d 384 (1986).

■ A moving party who will not have the burden of proof at trial need only point to the insufficiency of the other side's evidence, thereby shifting to the nonmoving party the burden of raising genuine issues of fact by substantial evidence. *T.W. Electric,* 809 F.2d at 630 *citing Celotex,* 477 U.S. at 323, 106 S.Ct. at 2552–53; *Kaiser Cement,* 793 F.2d at 1103–04.

■ In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the nonmoving party. *T.W. Electric,* 809 F.2d at 630–31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)); *Ting v. United States,* 927 F.2d 1504, 1509 (9th Cir.1991).

■ The evidence the parties present must be admissible. Fed.R.Civ.P. 56(e). Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment. *See Falls Riverway Realty, Inc. v. Niagara Falls,* 754 F.2d 49 (2nd Cir.1985); *Thornhill Pub. Co., Inc. v. GTE Corp.,* 594 F.2d 730, 738 (9th Cir.1979). Hearsay statements found in affidavits are inadmissible. *See, e.g., Fong v. American Airlines, Inc.,* 626 F.2d 759, 762–63 (9th Cir.1980). The party who will have the burden of proof must persuade the Court that it will have sufficient admissible evidence to justify going to trial. The standard for judging a motion for summary judgment is the same standard used to judge a motion for a directed verdict: "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 251–52, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986).

#### 2. *Wage Discrimination Claim*

■ Title VII prohibits wage rate discrimination based on sex. 42 U.S.C. § 2000e–2(a)(1). Defendant argues that summary judgment should be granted as to plaintiff's wage discrimination cause of action because plaintiff can present no admissible evidence supporting this claim. Defendant contends that plaintiff's wage discrimination claim is based solely on an alleged disparity between her salary and the salary of male ministers within the BCA. Based on a statement contained in this Court's January 19, 1995 order, defendant argues that evidence of the salaries of BCA ministers is inadmissible to support this claim. As such, defendant claims that summary judgment is appropriate.

In response, plaintiff argues that her wage discrimination claim is supported by the following evidence: (1) plaintiff's position was budgeted at an annual salary of $24,700; (2) the $24,700 figure was chosen with the specific intent that the director's salary would be equivalent to the salary of the Bishop's executive assistant; (3) Bishop Yamaoka told plaintiff Himaka that she would not be paid the $24,700 because the male executive assis-

tant's "feelings would be hurt;" and (4) plaintiff started at $20,000 and never reached the same salary as that of the Executive assistant. Pl.Memo in Opp. at 23–24; Declaration of Himaka at 3.

In the January 19, 1995 order, this Court stated that "a comparison between plaintiff's salary and the salary of male ministers with the BCA would be improper, as infringing on the church's autonomy in an area of prime ecclesiastical concern." The only other evidence plaintiff offers is the statement of Bishop Yamaoka. Standing alone, the Bishop's statement that "Mr. Fukuma's feelings would be hurt," does not indicate wage discrimination on the basis of plaintiff's gender. Thus, plaintiff has failed to meet her burden of submitting admissible evidence sufficient to defeat summary judgment on this claim.

Plaintiff argues that the decision on this issue should be delayed under Rule 56(f) until further discovery is conducted. It seems unlikely, however, that plaintiff will uncover evidence to support her wage discrimination claim which does not implicate the "prime ecclesiastical" concerns of the BCA in church administration and governance. As such, any additional evidence that plaintiff might discover would also be inadmissible under this Court's January 19, 1995 Order. Accordingly, summary adjudication of this claim is appropriate.

### 3. *Quid Pro Quo Sexual Harassment Claim*

■ To prove *quid pro quo* sexual harassment, a plaintiff must show by a preponderance of the evidence that she was forced to choose between an economic loss or an economic benefit by submitting to the sexual demands of a person within the employer's organization who is in a position to affect her employment. *Meritor Savings Bank v. Vinson*, 477 U.S. 57, 106 S.Ct. 2399, 91 L.Ed.2d 49 (1986).

Defendant argues that plaintiff could not have suffered *quid pro quo* harassment because Shinseki did not hold any position where he had the power to affect the terms of plaintiff's employment with BCA. Defendant also argues that, even if Shinseki held such a position, the contents of the allegedly

harassing telephone call could not be construed as conditioning job benefits upon plaintiff's submission to Shinseki's sexual demands.

In response, plaintiff argues that her action for *quid pro quo* harassment is based upon "the defunding of her department because of her refusal to quietly allow Shinseki to 'talk dirty' to her." She claims that, based on the evidence submitted, a jury could reasonably conclude that her employment was conditional upon allowing this "sexual favor." Pl.Memo in Opp. at 23.

Plaintiff Himaka fails to submit any evidence of a causal connection between the defunding of her department and the allegedly harassing phone call by Shinseki. She does not submit any evidence that Shinseki was involved in the decision to defund her department, or had any influence over the decision at all. Instead, she argues that the action was taken by other members of the BCA organization in retaliation for her filing this suit. A *quid pro quo* action, however, is premised upon coercive sexual conduct. Without evidence that BCA's retaliation in defunding plaintiff's department was somehow influenced by Shinseki, plaintiff cannot present a prima facie case of *quid pro quo* harassment. Because plaintiff fails to submit evidence of this connection, summary judgment for defendant on this claim is appropriate.

### 4. *Hostile Work Environment Claim*

■ To support a hostile work environment cause of action, a plaintiff must show that: (1) she was subject to verbal or physical conduct of a sexual nature, (2) this conduct was unwelcome, and (3) the conduct was "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Ellison v. Brady*, 924 F.2d 872, 875–76 (9th Cir.1991); *see also Meritor*, 477 U.S. at 64–67, 106 S.Ct. at 2404–05; *E.E.O.C. v. Hacienda Hotel*, 881 F.2d 1504, 1514–15 (9th Cir. 1989). Defendant argues that plaintiff has not alleged conduct of a sexual nature which was "sufficiently severe or pervasive" to create an abusive working environment.

### a. Hostile Environment Standard

■ In response, plaintiff first argues that whether the particular conduct and facts at issue rise to the level of a "hostile environment" is peculiarly a jury question. Contrary to plaintiff's argument, however, the Supreme Court has ruled that the working environment must be perceived as abusive both subjectively and objectively. *Harris v. Forklift Sys., Inc.,* 510 U.S. 17, ——, 114 S.Ct. 367, 370, 126 L.Ed.2d 295 (1993). The *Harris* requirement of an "objectively" abusive working environment renders this issue susceptible to summary judgment.

### b. The Alleged Sexual Harassment

Plaintiff then argues that "it is not unreasonable to conclude that any reasonable single woman who had experienced the harassing telephone calls at home as plaintiff Himaka had experienced, and who had taken the steps she had taken to prevent further such calls, without success, would be scared witless upon receiving such a telephone call at her hotel room in a work-related setting." Pl.Memo in Opp. at 20.

■ Whether the conduct complained of by a plaintiff was sufficiently pervasive to create a hostile work environment is determined by the totality of the circumstances. *Harris v. Forklift Systems, Inc.,* 510 U.S. 17, ——, 114 S.Ct. 367, 371, 126 L.Ed.2d 295 (1993). Factors which the court may consider in evaluating the totality of the circumstances include (1) the frequency of the offensive encounters; (2) the severity of the offensive conduct; (3) whether the conduct was physically threatening or humiliating, or a mere offensive utterance; and (4) whether it unreasonably interfered with the employee's work performance. *Harris,* 510 U.S. at ——, 114 S.Ct. at 371; *see also Steiner,* 25 F.3d at 1463 (noting that the Supreme Court has taken a "middle path" approach to hostile environment claims and reiterating that "coworkers' occasional annoying or 'merely offensive' comments do not create a hostile environment"); *Ellison,* 924 F.2d at 878 ("the required showing of severity or seriousness

of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct") (citation omitted).

■ In this case, plaintiff complains of one isolated instance of offensive conduct in the workplace. This one incident, the offensive telephone call, was not physically threatening or humiliating. It was not repeated at plaintiff's place of employment and was not accompanied by any other sexual conduct in the workplace.[2] Moreover, the alleged co-employee who made the phone call was not a person who plaintiff was forced to work with on a daily basis; plaintiff was employed in the Bay area, while Shinseki was a minister in Washington state. This single isolated incident does not rise to the level of seriousness required to establish an abusive working environment.

■ Plaintiff attempts to create a "pattern" of sexual conduct by connecting telephone calls which she received at her home, and Shinseki's alleged conduct toward her roommate, Adrienne Benson, with the telephone call from Shinseki which occurred at the BMA meeting in San Jose. To support this argument, plaintiff submits the declaration of Adrienne Benson, a former member of Shinseki's temple in Washington and plaintiff's roommate since 1991. In the declaration, Benson states that, on several occasions, Shinseki asked her to move back to Washington and move in with him, but that she declined. Benson Declaration ¶¶ 11, 12, 14. She also states that Shinseki threatened to have Bishop Yamaoka fire her "if I did not accede to his wishes." Benson Declaration ¶ 12. Plaintiff also submits her own declaration, in which she states that during one of the telephone calls to her home "I thought I recognized the sound of banging dishes and Japanese voices. I associated these sounds with that of a typical Buddhist temple kitchen." Himaka Declaration ¶ 29. Plaintiff also states, in describing the offensive call from Shinseki at the BMA meeting, that "based upon the tone and pattern of the caller's breathing, and the character of the telephone

---

2. Indeed, the parties dispute whether even this call was made at plaintiff's "workplace." For purposes of this motion, the Court assumes that

the BMA meeting, a work-related function, was part of plaintiff's work environment.

call, I was certain that the call was from the same caller who had made harassing telephone calls to my home since 1991." Himaka Declaration ¶ 37.

Plaintiff's argument rests on a shaky foundation. This Court does not reject outright the idea that conduct of a sexual nature which occurs outside of the workplace or conduct which is directed at someone other than the plaintiff might contribute to a hostile work environment for the plaintiff. However, Himaka has not carried her burden of presenting sufficient evidence of the connection between the other alleged sexual conduct and the one incident of sexual conduct directed toward her. Moreover, Himaka has presented no evidence of the effect of this other alleged sexual conduct on her work environment.[3] Given the lack of evidentiary basis, plaintiff cannot survive summary adjudication of her hostile environment claim based upon a novel theory about sexual acts outside of her workplace.

### c. Actions by Employer

■ Finally, plaintiff argues that the actions of defendant BCA are what created the hostile work environment. Pl.Memo in Opp. at 20. Plaintiff presents evidence that (1) BCA failed to follow up on an earlier charge of sexual harassment made by another employee, Adrienne Benson; (2) BCA failed to require Shinseki to follow through with the imposed sanctions; (3) the BCA Investigative Report, despite finding misconduct, failed to conclude that the misconduct constituted sexual harassment; (4) after plaintiff filed a complaint with the EEOC and a suit in federal court, the funding for her entire department was eliminated. Plaintiff contends that, based on these facts, a reasonable wom-

an in her position could conclude that the BCA failed to restrain or even encouraged Shinseki's sexual advances.

Although plaintiff's evidence suggests that BCA's response to Shinseki's conduct was dilatory at best, this evidence, standing alone, does not create a hostile environment claim. Although "[e]mployers are liable for failing to remedy or prevent a hostile or offensive work environment of which management-level employees knew, or in the exercise of reasonable care should have known," *Ellison v. Brady*, 924 F.2d 872, 881 (9th Cir.1991) (quoting *EEOC v. Hacienda Hotel*, 881 F.2d 1504, 1516 (9th Cir.1989)), an employer's lack of remedial action is not itself evidence of the hostile work environment. A hostile environment claim requires wrongful verbal or physical conduct of a "sexual nature." *Id.* at 876. Thus, although the action or inaction of an employer in response to an allegation of sexual harassment may be probative on the issue of the employer's liability, this evidence is relevant only if the plaintiff first establishes that that incident created a hostile work environment. Because plaintiff Himaka has failed to make this prima facie showing, summary adjudication of this claim is proper.[4]

### B. Motion to Dismiss

#### 1. Legal Standard .

■ Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. The question presented by a motion to dismiss is not whether a plaintiff will prevail in the action, but whether she is entitled to offer evidence in support of her claim. *Scheuer v. Rhodes,*

---

**3.** The only evidence plaintiff submitted which could be considered as relating to the effect of the other alleged sexual conduct was one statement contained in Himaka's declaration. When Himaka received the call at the BMA meeting, but before she learned the identity of the caller, she says that "I became extremely frightened with the real possibility that I was being stalked by a sexual predator." Himaka Declaration ¶ 38. This statement, however, provides no indication of the effect of the other phone calls or Shinseki's alleged conduct toward Benson on plaintiff's *work environment.*

**4.** In the Second Amended Complaint, plaintiff's alleges a second cause of action for "unlawful employment discrimination." At the hearing, however, plaintiff's counsel stated that this cause of action was based solely on the alleged wage discrimination against plaintiff and the alleged retaliation by defunding plaintiff's department. As such, the Court will not discuss the "employment discrimination" cause of action separately.

416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974).

 In answering this question, the Court must assume that plaintiff's allegations are true and must draw all reasonable inferences in plaintiff's favor. *Usher v. City of Los Angeles,* 828 F.2d 556, 561 (9th Cir.1987). Even if the face of the pleadings suggests that the chance of recovery is remote, the Court must allow plaintiff to develop her case at this stage of the proceedings. *United States v. City of Redwood City,* 640 F.2d 963, 966 (9th Cir.1981).

### 2. *Unlawful Retaliation and Discipline*

Defendant argues that plaintiff has taken the liberty to include this new cause of action in violation of this Court's August 31, 1995 order. BCA argues that even if this Court allows the action to be included in the complaint, it should be dismissed because the First Amendment bars scrutiny by the Court of the church's institutional decisions.

#### a. *Effect of This Court's Prior Order*

Plaintiff brings her unlawful retaliation claim pursuant to Title VII, 42 U.S.C. § 2000e, *et seq.* In the August 31, 1995 order, this Court stated:

> Plaintiff alleges that defendants' defunding of her department as of February 1996 constitutes constructive, or, in the alternative, anticipatory discharge. She contends that this supports a tort claim for wrongful discharge in violation of public policy under California common law (SAC ¶¶ 31–36). Plaintiff may use these new factual allegations as support for her already existing Title VII claims.

In a footnote, the order added:

> BCA contends without much explanation that plaintiff's proposed amendments are barred by the First Amendment. In a previous order, the Court found that most of plaintiff's Title VII contentions were not barred by the First Amendment. These claims are similar. At this stage of the proceedings, the Court cannot say that amendment would be clearly futile.

From this language, it appears that the Order contemplated that plaintiff's allegations of defunding might be used to support a Title VII retaliation action. In any case, it is not clear that amending her complaint to add this Title VII claim was foreclosed by the August 31, 1995 order. Defendants are therefore left with the First Amendment argument that was considered by this court in the January order.

#### b. *First Amendment Analysis*

 As this Court's January 19, 1995 order made clear, Title VII may be applied to churches and other religious organizations, where such application will not foster excessive entanglement between church and state.

 The establishment clause of the First Amendment prohibits Congress from enacting any law "respecting an establishment of religion." U.S. Const.Amend. I. In determining whether a statute violates the establishment clause, the Supreme Court has examined three principal criteria: (1) whether the statute has a secular legislative purpose; (2) whether the principal or primary effect of the statute is neither to advance nor to inhibit religion; and (3) whether the statute fosters "an excessive government entanglement with religion." *Lemon v. Kurtzman,* 403 U.S. 602, 612–13, 91 S.Ct. 2105, 2111, 29 L.Ed.2d 745 (1971); *see also E.E.O.C. v. Fremont Christian School,* 781 F.2d 1362, 1369 (9th Cir.1986); *E.E.O.C. v. Mississippi College,* 626 F.2d 477 (5th Cir. 1980)

As the January Order noted, the BCA does not and cannot contend that Title VII has no secular legislative purpose or that it inhibits or advances religion as its primary effect. Thus, this Court's focus is on the third criteria: whether the statute fosters an excessive entanglement with religion.

 To determine whether a statute creates excessive entanglement, courts examine three factors: (1) the character and purpose of the institution involved; (2) the nature of the regulation's intrusion into church affairs; and (3) the resulting relationship between the government and the religious authority. *Fremont Christian School,* 781 F.2d at 1369 (citing *Lemon,* 403 U.S. at 615, 91 S.Ct. at 2112). This Court's January order examined these three factors in light of the claims in

plaintiff's original complaint. Because the character and purpose of the institution (BCA) has not changed, and the relationship between church and state resulting from application of Title VII also remains unaltered, this Court re-examines only the second factor in the analysis: the nature of the intrusion into church affairs created by allowing plaintiff to proceed with her retaliation claim.

 To make out a prima facie case for retaliation, Himaka must establish that she acted to protect her Title VII rights, that an adverse employment action was thereafter taken against her, and that a causal link exists between these two events. *Jordan v. Clark,* 847 F.2d 1368, 1376 (9th Cir.1988), *cert. denied,* 488 U.S. 1006, 109 S.Ct. 786, 102 L.Ed.2d 778 (1989). At that point, the burden of production then shifts to defendant BCA to advance legitimate, non-retaliatory reasons for any adverse actions taken against Himaka; she has the ultimate burden of showing that BCA's proffered reasons are pretextual. *Id.; Miller v. Fairchild Industries, Inc.,* 797 F.2d 727, 730–31 (9th Cir. 1986) (order and allocation of proof for retaliation claims follows familiar scheme announced in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973)).

 If plaintiff makes out a prima facie case of retaliation, the Court would be placed in the position of evaluating whether BCA had any "legitimate, non-retaliatory reasons" for the defunding of Himaka's department. Thus, BCA argues that the intrusion in this case would be the evaluation by the Court of the internal governance and financing of the church.

In *Fremont Christian,* the Ninth Circuit emphasized that the employment decisions of religious organizations "may be subject to Title VII scrutiny, where the decision does not involve the church's spiritual functions." *Fremont Christian,* 781 F.2d at 1370 (quoting *Rayburn v. General Conference of Seventh-day Adventists,* 772 F.2d 1164, 1171 (4th Cir.1985)). The *Fremont Christian* court ruled that the decision to provide health insurance only to "head of household" employees was not a decision which involved the church's "spiritual function." In contrast,

faced with an employment decision that involved the selection of the church's ministers, the *Rayburn* court held that the application of Title VII was precluded.

This Court views the BCA's decision to defund plaintiff's department as more akin to the employer's decision in *Rayburn.* Although the financial decisions of a church are not, strictly speaking, part of the church's "spiritual function," these decisions remain vital to a religious organization's ministerial and religious planning. Determining whether the decision to eliminate funding from Himaka's department—a religious education department—was "legitimate" seems likely to draw this Court into judgments on matters of faith and doctrine, as well as matters of general church governance. Because it appears that plaintiff's retaliation claim would result in "an intolerably close relationship between church and state both on a substantive and procedural level," *see Rayburn,* 772 F.2d at 1170, plaintiff's retaliation claim is dismissed without leave to amend, on First Amendment grounds.

### 3. *Breach of Implied Covenant*

 Defendants argue that plaintiff has failed to amend her complaint to conform to the requirements set out by this court regarding a breach of implied covenant action. The Court's August 31, 1995 order stated:

> Plaintiff seeks to add a claim for breach of the implied covenant of good faith and fair dealing. Such a claim sounds in contract rather than tort and is dependent on the existence of a contractual relationship between plaintiff and defendant. *See Foley [v. Interactive Data Corp.],* 47 Cal.3d [654] at 665–69 [254 Cal.Rptr. 211, 765 P.2d 373 (1988)]. Plaintiff alleges such a relationship, although she does not set forth the contours of any such employment contract with BCA. In light of the liberal policy governing amendment, the Court will give plaintiff leave to amend to plead a contract claim for breach of the implied covenant of good faith and fair dealing.

Plaintiff has failed to plead any additional facts which would establish the contours of the contractual relationship between plaintiff

and defendant BCA. Thus, plaintiff's implied covenant claim should be dismissed for failure to state a claim.

Moreover, even assuming that plaintiff had sufficiently alleged an employment contract between herself and BCA, no breach of that contract has occurred. As this Court stated in the August 31, 1995 order, any claim for wrongful termination is not ripe until plaintiff's department is actually defunded and her job eliminated in February of 1996. Thus, plaintiff cannot allege a breach based on wrongful termination.

Plaintiff attempts to argue that the breach of her employment contract was defendant's violation of the "public policy" and laws of California which prohibit sexual harassment and discrimination. The Court does not accept plaintiff's unsupported argument that all of the "public policy" of California can be deemed included as terms of her employment contract. Furthermore, even if the Court accepted this argument, in proving a breach based on a violation of a public policy against sexual harassment/discrimination, plaintiff would face the same First Amendment obstacles and evidentiary insufficiencies noted elsewhere in this Order. For these reasons, defendant's motion to dismiss is granted.

### C. *Motion for Rule 11 Sanctions*

#### 1. *Legal Standard*

Rule 11 provides in relevant part:
Every pleading, motion, and other paper ... [filed with the Court] shall be signed by at least one attorney of record [or the party....]
The signature of an attorney or party constitutes a certificate by the signer that the [paper ...] is *[1]* well grounded in fact and is *[2]* warranted by existing law or a good faith argument for the extension ... of existing law ... and *[3]* that it is not interposed for any improper purpose.... If a ... paper is signed in violation of this rule, the court ... shall impose ... an appropriate sanction....

The test imposed by Rule 11 is an objective one. *Zaldivar v. City of Los Angeles,* 780 F.2d 823, 831 (9th Cir.1986). The certification requirements of Rule 11 are violated "if the paper filed ... is frivolous, legally unreasonable or without factual foundation, even though ... not filed in subjective bad faith." *Id.*

Under this objective interpretation of Rule 11, a cause of action is "well grounded in fact" if an independent examination reveals "some credible evidence" in support of a party's statements. *Kendrick v. Zanides,* 609 F.Supp. 1162, 1172 (N.D.Cal. 1985). A cause of action is not "warranted by law" where no "plausible, good faith argument can be made by a competent attorney" in support of the proposition asserted. *Zaldivar v. City of Los Angeles,* 780 F.2d at 829, 833 (rejecting white heart, empty head defense).

Finally, under the objective interpretation of Rule 11, improper purpose is determined following the Court's own review of the facts and the law: Where there is no legal or factual basis for a claim, improper purpose may be deduced. *See Huettig & Schromm, Inc. v. Landscape Contractors,* 790 F.2d 1421, 1427 (9th Cir.1986). Similarly, where there is a basis for a claim in law and fact, the "subjective intent of the pleader ... is of no moment." *Zaldivar,* 780 F.2d at 830.

By its terms, sanctions under Rule 11 are limited to misconduct in the filing of "pleadings, motions, or other papers" with the Court. *United Energy Owners v. United Energy Management Systems, Inc.,* 837 F.2d 356, 364–65 (9th Cir.1988). Additionally, the terms of Rule 11 are mandatory, and where the certification required by Rule 11 has been violated, sanctions must be imposed. *Golden Eagle Distributing Corp. v. Burroughs Corp.,* 801 F.2d 1531, 1536, 1540 (9th Cir.1986). However, the type and amount of sanction remain within the discretion of the Court. *Id.*

#### 2. *Analysis*

Plaintiff's deviation from this Court's prior order was not severe enough to warrant the imposition of sanctions. Moreover, although insufficient to survive defendant's motion to dismiss, plaintiff's new claims for retaliation

and breach of implied covenant were not "frivolous, legally unreasonable or without factual foundation." Thus, defendant's motion for sanctions is denied.

### III. CONCLUSION

For the above reasons, the Court GRANTS defendant's summary judgment motion, GRANTS defendant's motion to dismiss, and DENIES defendant's motion for sanctions.

IT IS SO ORDERED.